**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**SANDRA L. SMITH,**

    **Plaintiff,**

**v.**                                                          Case No. 8:11-cv-1795-T-17TBM

**MICHAEL J. ASTRUE,
Commissioner of the United States
Social Security Administration,**

    **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

       The Plaintiff seeks judicial review of the denial of her claim for Supplemental Security Income payments. Because the decision of the Commissioner of the United States Social Security Administration is not supported by substantial evidence or is not in accordance with the correct legal standards, I recommend that it be reversed.

I.

       Plaintiff was forty-six years old at the time of her administrative hearing. She stands 5 feet 4 inches tall and weighed 105 pounds according to her administrative filings. Plaintiff has an eleventh grade education. Her past relevant work was as a cashier and deli clerk. Plaintiff applied for Supplemental Security Income payments, asserting disability as of January 25, 2008, by reason of fibromyalgia, neuropathy, and depression. Plaintiff's application was denied originally and on reconsideration.

The Plaintiff next received a *de novo* hearing before an Administrative Law Judge ("ALJ"). The Plaintiff was represented at the hearing by counsel and testified in her own behalf. Additionally, a vocational expert was called by the ALJ.

In essence, Plaintiff testified she can no longer work because she suffers pain all over and has problems sitting, standing, and with her hands. Plaintiff described her pain as if someone is sticking a knife in her. The pain travels from her neck all the way down to her feet. She indicated her arms, legs, and feet get numb and "tingly," and that this occurs most of the time. She has used a walker for three years because her legs are weak and it helps with balance and coordination. By her account, without a walker, her knees and legs lock up and she has fallen.

Plaintiff also testified that she suffers from psychiatric problems. According to Plaintiff, she is unable to do things that normal people do and she has difficulty concentrating, focusing, and comprehending. She testified that she takes two medications but cannot afford the rest because the County does not cover them. She is unable to afford any psychiatric medications. In any event, the medications she takes do not help. Plaintiff believes that she needs the help of a psychiatrist.

Regarding her daily activities, Plaintiff testified to waking up at 5:00 a.m. and seeing her boyfriend off to work. She then cleans the house a little bit at her own pace and uses her computer for thirty minutes or so. She does not see visitors or go see others, but she does get on Facebook. As far as housework, Plaintiff does some vacuuming but does not do the laundry. She goes to the grocery store and does some of the cooking. When she sleeps, she sometimes has problems because of her pain.

With respect to her physical capabilities, Plaintiff estimated that she can sit for fifteen to thirty minutes but she squirms a lot and then her back and legs begin to hurt. She can stand with a walker for ten to fifteen minutes. She cannot stand without a walker unless she holds onto a railing or something sturdy. She can walk about a block with a walker before her legs force her to stop. She can only lift or carry one pound because of problems with her arms, back, and legs. Her condition has worsened over time. Plaintiff indicated she has a very distended stomach and this affects her lying down. When she does lie down, she must lie on her side because she cannot lie on her stomach and lying on her back hurts.

As for her past work, Plaintiff testified that she did telemarketing work in 2005 or 2006 but had to stop because the business would not accommodate her getting up every hour as directed by her doctor. She could not return to work in any job because her hands are very weak and she frustrates quickly. Additionally, she indicated that when she sits she is constantly squirming, getting up, and then sitting down, and she would need to get up from her position and walk around several times an hour. (R. 36-54).

Next, the ALJ took testimony from Nicholas Vidanza, a vocational expert ("VE"). On a hypothetical question assuming a person of Plaintiff's age, limited education, and past work experience capable of occasionally lifting and carrying ten pounds and frequently lifting and carrying less than ten pounds; able to stand and walk at least two hours in an eight-hour day; sit six hours in an eight-hour day; occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl but never climb ladders, ropes, or scaffolding; and must avoid concentrated exposures to extreme cold and heat and even moderate exposure to hazzards, such person could perform work as a charge account clerk, an order clerk/food and beverage,

3

and ticket seller. On a further assumption that the individual would require the use of a walker, the VE indicated that such jobs would still be available. If such a person also required a sit/stand option at will, the VE testified it would result in a 40% reduction overall in the occupations identified because not all of them would allow such an option. Nonetheless, the VE also testified there are other jobs that would allow for the use of a walker and a sit/stand option at will, including that of a semi-conductor bonder and wafer breaker. If such individual was limited to performing simple, routine tasks in a low stress work environment with only occasional contact with co-workers and supervisors and no contact with the general public, the expert stated that the charge account clerk, order clerk, and ticket seller jobs would be eliminated but the latter two jobs would remain. In addition, the VE identified the jobs of table worker and final assembler as jobs that would accommodate all these limitations. (R. 54-59).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed herein as necessary.

By his decision of August 16, 2010, the ALJ determined that while Plaintiff has severe impairments related to fibromyalgia, back disorders, degenerative joint disease, adjustment disorder mixed with anxiety, and bipolar disorder, she nonetheless had the residual functional capacity to perform a limited range of sedentary exertional work. Upon this finding and the testimony of the VE, the ALJ concluded that Plaintiff could perform jobs available to her in the local and national economy. Upon this conclusion, the Plaintiff was determined to be not disabled. (R. 17-26). The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

II.

To prevail on a claim for Supplemental Security Income payments, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id.* at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are

supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

### III.

The Plaintiff raises two claims on this appeal. As stated by the Plaintiff, they are as follows:

(1) The ALJ failed to analyze and determine what weight to give to the opinion of Dr. Hulley in regard to his diagnosis of the claimant as having fibromyalgia with large psychogenic overlay; and

(2) Dr. Sankoorikal rendered an opinion that severely limited the function of the claimant such as to presume disability. There is no substantial evidence for the ALJ to reject this opinion.

(Doc. 18).

In response, the Commissioner argues that the ALJ gave appropriate weight to the opinions of both Dr. Hulley and Dr. Sankoorikal. As for Dr. Sankoorikal, the Commissioner

contends that his opinion of disability was discounted because it conflicted with other evidence and because a portion of his opinion addressed matters reserved to the Commissioner. As for Dr. Hulley, the Commissioner notes that while the ALJ did not address his report, there is no rigid requirement that the ALJ expressly refer to every piece of evidence and Plaintiff cannot show prejudice in the failure to address this report. The Commissioner notes further that other evidence in the record supports the ALJ's conclusions and casts doubt on Plaintiff's credibility. (Doc. 21).

The regulations provide that, "[m]edical opinions are statements from physicians . . . that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what the claimant can still do despite impairment(s), and [the claimant's] physical or mental restrictions." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)). In this Circuit, certain rules apply to the consideration of the medical opinions of treating, examining, and nonexamining doctors. Thus, when considering a treating physician's opinions, the ALJ must ordinarily give substantial or considerable weight to such testimony unless good cause is shown to the contrary. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997). The opinion of an examining doctor typically is entitled to more weight than the opinion of a nonexamining doctor. *Broughton v. Heckler,* 776 F.2d 960, 961-62 (11th Cir. 1985); 20 C.F.R. § 416.927(d)(1). The reports of nonexamining, reviewing physicians, when contrary to those of examining physicians, are entitled to little weight in a disability case, and standing alone do not constitute substantial evidence on which to base an administrative

decision. *See Lamb v. Bowen,* 847 F.2d 698, 703 (11th Cir. 1988) (quoting *Sharfarz v. Bowen,* 825 F.2d 278, 280 (11th Cir. 1987)). However, an ALJ may rely on opinions of nonexamining sources when they do not conflict with those of examining sources. *See Edwards v. Sullivan*, 937 F.2d 580, 584-85 (11th Cir. 1991).

The ALJ must state with particularity the weight given different medical opinions and the reasons for the weight given, and failure to do so is reversible error. *Sharfarz*, 825 F.2d at 279; *Lucas v. Sullivan*, 918 F.2d 1567, 1574 (11th Cir. 1994); *Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986); *see also* 20 C.F.R. § 416.927(d). "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Winschel,* 631 F.3d at 1179 (quoting *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)).

Here, the medical evidence included a report from William C. Hulley, D.O., a board certified neurologist, who examined Plaintiff on September 8, 2008. (R. 415-19). The decision makes no reference to the report and it is unclear that the ALJ even considered it. By this exam, while the Plaintiff complained of pain all over, the doctor's review of mental status and his physical findings revealed generally normal findings. (R. 417). While such would appear inconsistent with some of Plaintiff's claims (but not necessarily with her claim of fibromyalgia and its related symptoms), the doctor gave a diagnostic impression that was of significance. Thus, upon his examination, he opined that Plaintiff's "fibromyalgia is large psychogenic overlay."[1] *Id.* In my view, the failure to address this doctor's report and

---

[1]"Functional or psychological 'overlay' is a state of affairs in which a person claims to be suffering from physical injury, but the doctor is satisfied that the symptoms are not the manifestation of any organic physical pathology, but are instead a manifestation only of the

8

diagnostic impression was error and dictates that the case be reversed. *See Winschel*, 631 F.3d at 1179 (reversing and remanding for ALJ to explicitly consider and explain the weight accorded to medical opinion evidence); *Gibson*, 779 F.2d at 623 (reversing and remanding for, among other things, ALJ to state weight accorded each item of impairment evidence). Furthermore, it is worth noting that the ALJ's error is heightened by the fact that the ALJ specifically addressed another consultative examination performed in September 2008 and relied on the objective findings (or lack thereof) and impression of "malingering" contained therein to discount Plaintiff's credibility.[2] (R. 22-23). Significantly, Dr. Hulley's diagnostic impression of fibromyalgia with "psychogenic overlay" calls into question the impression of "malingering." *See supra* n.1 (functional/psychological overlay is not malingering). This, coupled with the fact that the only other reason stated by the ALJ in discounting Plaintiff's subjective complaints of pain was the report of an essentially normal physical examination (which can mean little in a fibroymalgia case such as this), results in an inability to determine whether substantial evidence supports the ALJ's determination. As noted in *Winschel*, "when the ALJ fails to 'state with at least some measure of clarity the grounds for his decision,' [the

---

individual's psychological state." http://www.eortrial.co.uk/Default.aspx?id=1054814 (last visited June 21, 2012).

"Functional overlay is not a recognized psychiatric diagnosis. Evaluating functional overlay and differentiating between this concept and organic conditions is important in medicolegal areas in which financial values are placed on pain and disability. Functional overlay is not malingering: the former is based on preconscious or unconscious mechanisms, the latter is consciously induced." http://www.ncbi.nlm.nih.gov/pmc/articles/PMC1238729/ (abstract) (last visited June 20, 2012).

[2]This was a "Disability Physical" by Thomas F. Beaman, D.O., P.A., Internal Medicine/FACOI, Aviation Medicine. *See* (R. 438-39).

court] will decline to affirm 'simply because some rationale might have supported the ALJ's decision.'" 631 F.3d at 1179.

The Commissioner urges that any error in failing to consider the report is harmless given the nature of the doctor's physical findings and the fact that the doctor's diagnosis alone says nothing about the severity of the impairment and given the other medical evidence actually considered. Even assuming, for arguments sake, that such assertions are correct as to the factual considerations, the error here relates to the failure to follow applicable legal standards. Moreover, the nature of the doctor's physical findings, i.e., essentially normal, are fairly typical in cases involving fibroymalgia and do not necessarily undercut claims of severe functional limitations.[3] Furthermore, I cannot agree that because the ALJ found a combination of physical and mental impairments, he was not obliged to consider this doctor's report. Lastly, while the Commissioner relies on *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) for the proposition that "there is no rigid requirement that the ALJ

---

[3]On remand, should the ALJ discount Plaintiff's fibromyalgia related symptoms on the ground of the lack of objective evidence and clinical findings, he should be cautioned that doing so may be improper without more. *See Stewart v. Apfel,* No. 99-6132, 2000 U.S. App. Lexis 33214 at *7-10, 2000 WL 1862846 (11th Cir. Dec. 20, 2000) (noting that fibromyalgia often lacks medical or laboratory signs; indeed, its hallmark is a lack of objective evidence); *Green-Younger v. Barnhart*, 335 F.3d 99, 107-09 (2nd Cir. 2003) (providing that a doctor's opinion regarding functional limitations is not undermined by reliance on the plaintiff's subjective complaints when the plaintiff suffers from fibromyalgia, and noting that, "in stark contrast to the unremitting pain of which fibrositis patients complain, physical examinations will usually yield normal results a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions"); *Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004) (noting that "fibromyalgia is diagnosed entirely on the basis of patients' reports of pain and other symptoms," its cause is unknown, there is no cure, and it is poorly understood within much of the medical community); *see also Harrison's Principles of Internal Medicine*, 1706-07 (Kurt J. Isselbacher et al., eds., 13th ed. 1994) (reporting that, with fibromyalgia, joint and muscle examination typically is normal).

specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . ." enables the court to conclude that the ALJ considered the plaintiff's medical condition as a whole, that case is factually distinguishable and inapposite to the determination in this case. As observed in *Brunson v. Astrue*, __ F. Supp. 2d __, 2011 WL 839366, at *12 (M.D. Fla. Mar. 7, 2011), "there is a difference in failing to address a pain medication the plaintiff has been prescribed on one occasion (as was the case in *Dyer*) and failing to discuss probative evidence of one of Plaintiff's diagnoses (as is the case here)."

In sum, a remand is required. *See Jamison v. Bowen*, 814 F.2d 585, 588-89 (11th Cir. 1987) (providing that remand for clarification is required if a reviewing court is unable to determine from the decision that the proper legal standards were applied).

On this conclusion, it is unnecessary to address Plaintiff's second claim that the ALJ did not adequately discount the opinion of Anthony Sankoorikal, M.D., regarding Plaintiff's residual functional assessment ("RFC"). *See Jackson v. Bowen*, 801 F.2d 1291, 1294 n. 2 (11th Cir. 1986) (stating that where remand is required, it may be unnecessary to review other issues raised). Nonetheless, I note the following. Dr. Sankoorikal was a treating rheumatologist whose opinions are entitled to deference under the applicable standard absent a showing of good cause.[4] Here, the ALJ relied upon physical findings in the report from a one-time consulting examiner to discount this treating doctor's opinions and gave great weight to the opinions of a nonexamining doctor (Dr. Beaman) in reaching his RFC assessment. In light of Dr. Hulley's opinion concerning the psychological overlay of Plaintiff

---

[4]The Eleventh Circuit has noted that rheumatologists "may be better qualified to determine the effects of fibromyalgia because not all doctors are trained to recognize this disorder." *See Stewart*, 2000 U.S. App. Lexis 33214 at *8.

11

pain complaints, the ALJ should revisit this treating physician evidence in light of the applicable standard.

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is not supported by substantial evidence or is not in accordance with the correct legal standards, and I recommend that it be reversed and remanded for further proceedings before the Commissioner consistent with this Report and Recommendation. I further recommend that the Clerk be directed to enter Judgment in favor of the Plaintiff and to close the case, and the matter of fees and costs shall be addressed upon further pleadings.

Respectfully submitted this
25th day of June 2012.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; *see also* Fed. R. Civ. P. 6.

Copies furnished to:
The Honorable Elizabeth A. Kovachevich, United States District Judge
Counsel of Record